**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

UNITED STATES OF AMERICA,

                Plaintiff,

                                       Civil Action No. 20-CV-00944

    v.

LAZARUS BONILLA, and
DEACONESS HOME HEALTH, INC.

                Defendants.

## COMPLAINT

Plaintiff, the United States of America ("United States"), alleges for its complaint as follows:

### Introduction

1. The United States brings this action against Defendants Lazarus Bonilla ("Bonilla") and his company, Deaconess Home Health, Inc. ("Deaconess")(collectively, "Defendants"), for monetary damages and penalties resulting from Defendants' breach of their Settlement Agreement with the United States, a copy of which is attached hereto as Exhibit 1.

### Jurisdiction

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345.

3. The Court has personal jurisdiction over Defendants, and venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1391 and 3004, because Defendants are domiciled in this District and because Defendants consented to litigation in this District in the Settlement Agreement.

## Parties

4.      The plaintiff is the United States of America.

5.      Bonilla is a citizen of the United States and the former owner and officer of Deaconess.  Upon information and belief, Bonilla is domiciled in Hales Corners, Wisconsin.

6.      Deaconess, formerly known as Outreach Healthcare, was a home health agency with its principal office located in Milwaukee, Wisconsin.

## The United States and Defendants Enter Into A Settlement To Resolve Disputed Claims

7.      Between 2010 and 2013, relators filed three *qui tam* actions in the United States District Court of the Eastern District of Wisconsin captioned as *U.S. ex rel. Ritacca v. Atlas Healthcare, Inc., et al,* Case No. 10-C-253, *U.S. and State of Wisconsin ex rel. Komlodi v. Outreach Healthcare, Inc., et al.,* Case No. 11-C-973, and *U.S. and State of Wisconsin ex rel. Campbell v. DHH, et al.,* Case No. 13-C-488.  These cases were consolidated on or about June 7, 2013.  Among other things, the relators alleged that Bonilla and Deaconess (or a predecessor entity) submitted false or fraudulent claims to the Wisconsin Medicaid Program for personal care worker services.

8.      After investigation, the United States determined that Defendants had submitted false and fraudulent claims to the Wisconsin Medicaid Program between January 1, 2008 and May 31, 2013 for (1) personal care worker services that were not provided, that were not provided pursuant to appropriate supervision by Deaconess, or were not medically necessary; and (2) personal care services that were referred or ordered in violation of the Anti-Kickback Statute, 42 U.S.C. § 3720a-7(b).  Defendants did not concede liability for these claims.

9.      To resolve these disputed claims, and to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, the United States intervened in the

2

consolidated actions for purposes of settlement. During settlement negotiations both the United States and Defendants were represented by legal counsel. The Settlement Agreement was fully executed and effective beginning October 28, 2015.

## Defendants Materially Breach The Settlement Agreement

10.     Under the Settlement Agreement, Defendants promised to pay the United States the total amount of $3,724,000.00 (the "Settlement Payment"), comprised of an initial payment, the release of funds seized from Defendants' bank accounts, the release of funds held in suspense by the Wisconsin Medicaid Program, and, as is relevant here, $789,070.41 (plus interest) in payments over time, in accordance with the schedule provided under Paragraph 1(b) of the Settlement Agreement. (*See* Exhibit 1, ¶ 1(b) & Attachment A).

11.     In exchange for the Settlement Payment and the Defendants' other promises and representations in the Settlement Agreement, the United States dismissed its claims against Defendants and provided certain releases to the Defendants.

12.     The United States has fully complied with its obligations under the Settlement Agreement.

13.     Nevertheless, Defendants failed to make the payments required under Paragraph 1(b) of the Settlement Agreement. Specifically, Defendants paid only $25,000 towards the Paragraph 1(b) payment that was due on October 1, 2019, and they have failed to make any additional payments since that partial payment or provide the United States assurances that they intend to comply with their obligations under the Settlement Agreement.

## COUNT I: Breach of Contract (Monetary Damages)

14.     United States re-alleges paragraphs 1 through 13 above.

15. Defendants' failure to make the required payments under Paragraph 1(b) constitutes a material breach of the Settlement Agreement.

16. The United States has repeatedly contacted counsel for the Defendants regarding Defendants' breach of the Settlement Agreement. However, Defendants have not remedied their breach and made the remaining payments required under Paragraph 1(b) of the Settlement Agreement, nor have Defendants provided the United States with any assurances that they intend to do so.

17. Defendants owe the United States at least $175,535.96, as of the date of this complaint, of which $78,057.57 is overdue. Interest on these amounts continues to accrue at the rate of 2.25% per annum.

18. Defendants' material breach of the Settlement Agreement has caused the United States to suffer damages, including loss of the outstanding balance of the Paragraph 1(b) payments, plus interest at the rate of 2.25% per annum, as well as the loss of the use of said monies.

## Prayer for Relief

WHEREFORE, the United States requests that the Court enter judgment in its favor against Defendants as follows:

I. For the amount of the United States's damages for Defendants' breach of the Settlement Agreement, including interest accruing at the rate of 2.25% per annum until the date of the judgment;

II. Any applicable statutory surcharge, including the 10 percent surcharge authorized by 28 U.S.C. § 3011.

III. Any such other and further relief that the Court deems just and proper.

4

Dated this 24th day of June, 2020.

MATTHEW D. KRUEGER
United States Attorney

By:     /s Michael A. Carter

MICHAEL A. CARTER
EMILY A. CONSTANTINE
Assistant United States Attorneys
Eastern District of Wisconsin
State Bar No. 1090041
State Bar No. 1087257
517 East Wisconsin Avenue
Milwaukee, WI  53202
(414) 297-4101
Fax:  (414) 297-4394
Michael.A.Carter@usdoj.gov
Emily.Constantine@usdoj.gov

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereafter "Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), (hereafter, the "United States"); the State of Wisconsin; Deaconess Home Health Inc., and Lazarus Bonilla (collectively hereafter, "Defendants"); and Rick Ritacca, Paul Komlodi, and Kelly Campbell (collectively hereafter, "Relators") (all named parties collectively hereafter referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Deaconess Home Health, Inc., formerly known as Outreach Healthcare (hereinafter "Deaconess"), was a home health agency located in Milwaukee, Wisconsin. At all times material to this Agreement Lazarus Bonilla owned Deaconess. Since at least 2008, Deaconess has billed the Wisconsin Medicaid Program for services to members of the Medicaid Program for personal care worker services.

B. On March 25, 2010, Rick Ritacca filed a *qui tam* action in the United States District Court for the District of Eastern District of Wisconsin against several Defendants including Outreach, Case No. 10-C-253 captioned as *U.S. ex rel. Ritacca v. Atlas Healthcare Inc., et al.* (the "Ritacca Action"). On October 18, 2011, Paul Komlodi filed a *qui tam* action against Outreach Healthcare and Lazarus Bonilla, Case No. Case No. 11-C-973, in the Eastern District of Wisconsin captioned as *U.S. and State of Wisconsin ex rel. Komlodi v. Outreach Healthcare Inc., et al.* (the "Komlodi Action"). On May 1, 2013, Kelly Campbell filed a *qui tam* action against Deaconess and Bonilla, Case No. 13-C-488, in the Eastern District of Wisconsin captioned as *U.S. and State of Wisconsin ex rel. Campbell v. DHH, et al.* (the

1

**EXHIBIT**
**A**

"Campbell Action"). All three actions were brought pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). Collectively, the Ritacca Action, the Komlodi Action, and the Campbell Action shall be referred to as the "Civil Actions." The Relators contended that Deaconess submitted false or fraudulent claims to the Wisconsin Medicaid Program for personal care worker services ("Relators' Complaint Allegations").

C.      The United States and the State of Wisconsin contend that Defendants submitted or caused to be submitted claims for payment for personal care worker services to the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

D.      The United States and the State of Wisconsin contend that they have certain civil claims against Defendants arising from the submission of claims to the Wisconsin Medicaid Program between January 1, 2008 and May 31, 2013 for (1) personal care worker services that were not provided, that were not provided pursuant to appropriate supervision by Deaconess, or were not medically necessary; and (2) personal care services that were referred or ordered in violation of the Anti-Kickback Statute, 42 U.S.C. §3720a-7(b). This conduct is referred to below as the "Covered Conduct."

E.      This Agreement is neither an admission of liability by Defendants nor a concession by the United States or the State of Wisconsin or Relators that their claims are not well founded.

F.      Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

2

## TERMS AND CONDITIONS

1.     Defendants shall pay to the United States a Settlement Amount of $3,724,000, plus interest as described below, consisting of (1) an initial payment (the "Initial Payment"), (2) remaining payments on a fixed schedule (the "Remaining Fixed Payments"), (3) the release of $2,206,398.02 seized from Layton State Bank Account No. (ending in 0520) to the Department of Justice; and (4) the release of $728,531.57 currently being held in suspense by the Wisconsin Medicaid Program under the following terms and conditions:

   a.   Defendants shall pay the United States the sum of $300,000 plus interest accrued at the rate of 2.25% per annum from September 4, 2015, continuing until and including the day payment is made (the "Initial Payment"). The Initial Payment shall be paid no later than seven business days after the effective date of this Agreement. The Initial Payment shall be paid by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Wisconsin.

   b.   The Defendants shall pay the United States the Remaining Fixed Payments plus interest according to the payment schedule in Attachment A by electronic funds transmission pursuant to instructions provided by the United States Attorney's Office for the Eastern District of Wisconsin.

   c.   The Defendants shall take all steps necessary to release to the United States' Department of Justice the $2,206,398.02 seized from Deaconess' bank account at Layton State Bank (Account No. ending in 0520); and

   d.   The Defendants shall take all steps necessary to release to the Wisconsin Medicaid Program the $728,531.57 being in held in suspense.

3

2.      Conditioned upon the United States receiving the Settlement Amount payments and releases stated above from Defendants, the United States agrees that it shall pay to Relator Komlodi's counsel, Milberg LLP, for distribution to all Relators by electronic funds transfer 16% percent of:   (1) the Initial Payment and the funds identified in Paragraphs 1(c) and 1(d) above as soon as feasible after receipt of the Initial Payment  and (2) the remaining payments identified in Paragraph 1(b) as soon as feasible after receipt of those funds .

3.      Defendants shall pay Relator Komlodi's counsel, Milberg LLP, the sum of $100,000 for distribution to Relators' counsel in satisfaction of the Relators' claim for statutory fees and costs pursuant to 31 U.S.C. § 3730(d) no later than seven business days after the effective date of this Agreement.

4.      Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Amount, and subject to Paragraph 20, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud and the State of Wisconsin releases Defendants from any civil or administrative monetary claim the State of Wisconsin has for the Covered Conduct under the Wisconsin False Claims Act, Wis. Stat. §20.931 or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in this Paragraph and Paragraph 7 below , and conditioned upon Defendants  full payment of the Settlement Amount, and subject to Paragraph

4

20, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release Defendants, together with their related or affiliated corporations, current or former officers and directors, as well as any their heirs, successors, attorneys, agents, assigns and employees, from any and all claims or actions that are part of, or are in any way related to the Relators' Complaint Allegations, including, without limitation, any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Wisconsin False Claims Act, Wis. Stat. §20.931. This release expressly does not release Mr. Ritacca's claims against Atlas Healthcare, Inc., Deanna Bajanen, and Sheena Jones, including the claims asserted in the Ritacca Action.

6.    Voluntary Exclusion

a.    In compromise and settlement of the rights of OIG-HHS to exclude Lazarus Bonilla pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the Covered Conduct, Lazarus Bonilla agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of 15 years. The exclusion shall be effective upon the Effective Date of this Agreement.

b.    Such exclusion shall have national effect. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Lazarus Bonilla in any capacity while Lazarus Bonilla is excluded. This payment prohibition applies to Lazarus Bonilla and all other individuals and entities (including, for example, anyone who employs or contracts with Lazarus Bonilla, and any hospital or other provider where Lazarus Bonilla provides services). The exclusion applies

5

regardless of who submits the claim or other request for payment. Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion. Lazarus Bonilla further agrees to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. Lazarus Bonilla waives any further notice of the exclusion and agrees not to contest such exclusion either administratively or in any state or federal court.

   c.  Reinstatement to program participation is not automatic. If Lazarus Bonilla wishes to be reinstated, Lazarus Bonilla must submit a written request for reinstatement to the OIG in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Such request may be made to the OIG no earlier than 120 days prior to the expiration of the 15-year period of exclusion. Reinstatement becomes effective upon application by Lazarus Bonilla, approval of the application by the OIG, and notice of reinstatement by the OIG. Obtaining another license, moving to another state, or obtaining a provider number from a Medicare contractor, a state agency, or a Federal health care program does not reinstate Lazarus Bonilla's eligibility to participate in these programs.

   d.  In compromise and settlement of the rights of OIG-HHS to exclude Deaconess Home Health, Inc. pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the Covered Conduct, Deaconess Home Health, Inc. agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of 15 years. The exclusion shall be effective upon the Effective Date of this Agreement.

6

e.  Such exclusion shall have national effect.  Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Deaconess Home Health, Inc. in any capacity while Deaconess Home Health, Inc. is excluded.  This payment prohibition applies to Deaconess Home Health, Inc. and all other individuals and entities (including, for example, anyone who employs or contracts with Deaconess Home Health, Inc., and any hospital or other provider where Deaconess Home Health, Inc. provides services).  The exclusion applies regardless of who submits the claim or other request for payment.  Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion.  Deaconess Home Health, Inc. further agrees to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. Deaconess Home Health, Inc. waives any further notice of the exclusion and agrees not to contest such exclusion either administratively or in any state or federal court.

f.  Reinstatement to program participation is not automatic.  If Deaconess Home Health, Inc. wishes to be reinstated, Deaconess Home Health, Inc. must submit a written request for reinstatement to the OIG in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005.  Such request may be made to the OIG no earlier than 120 days prior to the expiration of the 15-year period of exclusion.  Reinstatement becomes effective upon application by Deaconess Home Health, Inc., approval of the application by the OIG, and notice of reinstatement by the OIG.  Obtaining another license, moving to another state, or obtaining a provider number from a Medicare contractor, a state agency, or a Federal health care program

7

does not reinstate Deaconess Home Health, Inc.'s eligibility to participate in these programs.

7.     Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

      a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.     Any criminal liability;

      c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory and permissive exclusion from Federal health care programs;

      d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.     Any liability based upon obligations created by this Agreement;

      f.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

      g.     Any liability for failure to deliver goods or services due;

      h.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

      i.     Any liability of individuals other than Lazarus Bonilla.

8.     Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator Komlodi's receipt of the payment described in Paragraph 2, Relators and their heirs, successors,

8

attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, the State of Wisconsin, and their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730 and Wis. Stat. §20.931, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

9.     Subject to the exceptions in the Paragraph and conditioned on Relator Komlodi's receipt of the payment described in Paragraph 3, Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release Defendants, together with their related or affiliated corporations, current or former officers and directors, as well as any of their heirs, successors, attorneys, agents, assigns, and employees from any liability to Relators under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs. This release expressly does not release Mr. Ritacca's claims against Atlas Healthcare, Inc., Deanna Bajanen, and Sheena Jones under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

10.     Defendants have provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Defendants warrant that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which any defendant had an interest at the time of this Agreement that was not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by any defendant on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $300,000 or more, the United States may at its option:  (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement

9

Amount plus one hundred percent (100%) of the value of the net worth of Defendants previously undisclosed. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

11.     In the event that the United States, pursuant to Paragraph 10 (concerning disclosure of assets), above, opts to rescind this Agreement, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within sixty (60) calendar days of written notification to Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on March 25, 2010.

12.     Defendants waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

13.     Defendants fully and finally release the United States, the State of Wisconsin, and their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States and the

10

State of Wisconsin, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and the State of Wisconsin's investigation and prosecution thereof.

14. Defendants fully and finally release the Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relators, related to Relators' Complaint Allegations and the Relators' investigation and prosecution thereof.

15. Except for the amounts addressed in Paragraph 1(d) herein, the Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

16. Defendants agree to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil and any criminal investigation of the matters covered by this Agreement;

11

(3)      Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigations in connection with the matters covered by this Agreement (including attorney's fees);

(4)      the negotiation and performance of this Agreement;

(5)      the payment Defendants make to the United States pursuant to this Agreement and any payments that Deaconess may make to Relator, including costs and attorneys' fees; and

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.      <u>Future Treatment of Unallowable Costs</u>:   Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by Deaconess, and Deaconess shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Deaconess or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.      <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Deaconess further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program,

12

including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Deaconess or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Deaconess agrees that the United States, at a minimum, shall be entitled to recoup from Deaconess any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Deaconess or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Deaconess or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

     d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Deaconess's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.    Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents,

13

sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.     Deaconess agrees not to file for bankruptcy, insolvency, reorganization, or other financial relief within 91 days of execution of this Agreement.  Bonilla warrants that he has reviewed his financial situation and that he currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, any defendant commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

14

a.    Defendants' obligations under this Agreement may not be avoided

pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any

such case, proceeding, or action that:  (i) Defendants' obligations under this Agreement may be

avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was

entered into, or became insolvent as a result of the payment made to the United States; or (iii) the

mutual promises, covenants, and obligations set forth in this Agreement do not constitute a

contemporaneous exchange for new value given to Defendants.

b.    If Defendants' obligations under this Agreement are avoided for any

reason, including, but not limited to, through the exercise of a trustee's avoidance powers under

the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this

Agreement and bring any civil and/or administrative claim, action, or proceeding against

Defendants for the claims that would otherwise be covered by the releases provided in

Paragraphs 4 and 5, above.  Defendants agree that (i) any such claims, actions, or proceedings

brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. §

362(a) as a result of the action, case, or proceedings described in the first clause of this

Paragraph, and Defendants shall not argue or otherwise contend that the United States' claims,

actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or

otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or

similar theories, to any such civil or administrative claims, actions, or proceeding that are

brought by the United States within 14 calendar days of written notification to Defendants that

the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses

were available on March 26, 2010; and (iii) the United States has a valid claim against

Defendants in the amount of $15,000,000 plus penalties, and the United States may pursue its

15

claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c.      Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

21.     Upon receipt of the payment described in Paragraph 1, above, Relators Komlodi and Campell, the United States, and the State of Wisconsin shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Komlodi Action and the Campbell Action pursuant to Rule 41(a)(1). Upon receipt of the payment described in Paragraph 1, above, Ritacca, the United Sates, and the State of Wisconsin shall promptly sign and file in the Ritacca Action a Joint Stipulation of Dismissal of all claims against Defendants, but such stipulation shall not dismiss the Ritacca Action in its entirety insofar as the Ritacca Action includes claims against other defendants.

22.     Except as set forth above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

23.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

24.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Wisconsin. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

26. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

27. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

28. This Agreement is binding on Defendants and Defendants' successors, transferees, heirs, and assigns.

29. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

30. All parties consent to the United States' and the State of Wisconsin's disclosure of this Agreement, and information about this Agreement, to the public.

31. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

17

**THE UNITED STATES OF AMERICA**


GREGORY J. HAANSTAD
Acting United States Attorney

DATED: 10-28-15          BY:  _[signature]_
STACY C. GERBER WARD
Assistant United States Attorney
Eastern District of Wisconsin


DATED: 10/26/15          BY:  _Robert K. DeConti_
ROBERT K. DECONTI
Assistant Inspector General for Legal Affairs
Office of Counsel to the
   Inspector General
Office of Inspector General
United States Department of
   Health and Human Services

18

**STATE OF WISCONSIN**

DATED: _10-23-15_ BY: _____

ALAN S. WHITE
Inspector General
Office of the Inspector General
Wisconsin Department of Health Services

**DEFENDANTS**

DATED: 10/22/15   BY: _____
Lazarus Bonilla, individually and
as owner and Chief Executive Office of
Deaconess Home Health, Inc.


DATED: 10/22/15   BY: _____
Attorney Patrick Coffey
Whyte Hirschboek Dudek
Counsel for Lazarus Bonilla and
Deaconess Home Health, Inc.

20

**RICK RITACCA - RELATOR**

DATED: _10/22/15_   BY: _____

                          Rick Ritacca

DATED: _____   BY: _____

                          Attorney Daniel Twetten
                          Counsel for Rick Ritacca

## RICK RITACCA - RELATOR

DATED: _____          BY: _____
                                Rick Ritacca

DATED: _10/21/15_          BY: _____
                                Attorney Daniel Twetten
                                Counsel for Rick Ritacca

21

## PAUL KOMLODI - RELATOR

DATED: _10/24/15_     BY: _George Paul Komlodi_
                          Paul Komlodi

DATED: _10/22/15_     BY: _(signature)_
                          Attorney Anna Dover
                          Counsel for Paul Komlodi

State of _Wi_
County of _Washington_
subscribed and sworn before me on _10-26-15_     _B-J_
Notary Signature _(signature)_

                                            COMM Exp 6/19/16

```
BRIAN DEGROOT
Notary Public
State of Wisconsin
```

22

**KELLY CAMPBELL - RELATOR**

DATED: _10-23-15_          BY: _Kelly Campbell_
                              Kelly Campbell

DATED: _10-23-15_          BY: _____
                              Attorney Nola Hitchcock Cross
                              Counsel for Kelly Campbell

23

## Deaconess Home Health Settlement Agreement
### Attachment A - Payment Schedule

| Interest | 2.25% |
|---|---|
| Balance | $789,070.40 |

| No | Date | Payment | Interest at 2.25% | Principal | Balance | Days |
|---|---|---|---|---|---|---|
| 1 | 10/30/2015 | $302,723.91 | $2,723.91 | $300,000.00 | $489,070.40 | 0 |
| 2 | 10/1/2016 | $108,848.32 | $11,034.23 | $97,814.09 | $391,256.31 | 366 |
| 3 | 10/1/2017 | $106,617.35 | $8,803.27 | $97,814.08 | $293,442.23 | 365 |
| 4 | 10/1/2018 | $104,416.53 | $6,602.45 | $97,814.08 | $195,628.15 | 365 |
| 5 | 10/1/2019 | $102,215.71 | $4,401.63 | $97,814.08 | $97,814.07 | 365 |
| 6 | 10/1/2020 | $100,020.93 | $2,206.85 | $97,814.08 | $0.00 | 366 |
| | Totals | $824,842.75 | $35,772.34 | $789,070.41 | | |

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required): ☐ Green Bay Division ☒ Milwaukee Division

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Lazarus Bonilla and Deaconess Home Health, Inc. |

| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant **Milwaukee** <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
|---|---|
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> AUSA Michael Carter and Emily Constantine, 517 E. Wisconsin Ave., Suite 530, Milwaukee, WI 53202 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☒ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated New Drug Application <br> ☐ 840 Trademark | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 485 Telephone Consumer Protection Act <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - Conditions of Confinement | **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Management Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement Income Security Act <br> **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration Actions | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information Act <br> ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* <br> 28 U.S.C. 1345 <br> Brief description of cause: <br> Breach of settlement agreement |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ <br> 175,535.96 | CHECK YES only if demanded in complaint: <br> JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE Lynn Adelman | DOCKET NUMBER 10-cv-253 |
|---|---|---|---|

| DATE <br> 06/24/2020 | SIGNATURE OF ATTORNEY OF RECORD <br> /s Michael A Carter |
|---|---|

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use

**(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the

**(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here. United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box. Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for:  Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

|  |  |
|---|---|
| _____ ) ) ) ) )<br>Plaintiff(s) )<br>v. )<br> )<br> )<br> )<br>_____ )<br>Defendant(s) ) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*GINA M. COLLETTI, CLERK OF COURT*


Date: _____                    _____
                                                                          *Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

|  |  |
|---|---|
| _____ ) | |
| _Plaintiff(s)_ ) | |
| v. ) | Civil Action No. _____ |
| _____ ) | |
| _Defendant(s)_ ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


_GINA M. COLLETTI, CLERK OF COURT_


Date: _____              _____
                                                                       _Signature of Clerk or Deputy Clerk_